**RECEIVED**

**MAY 0 7 2013**

Crystal L. Cox Pro Se
P.O. Box 2027
Port Townsend, WA
(406) 624-9510
Crystal@CrystalCox.com

CLERK, U.S. DISTRICT COURT
DISTRICT OF MONTANA
HELENA

## UNITED STATES DISTRICT COURT
### DISTRICT OF Montana

Plaintiff Crystal L. Cox
1- 5 John and Jane Doe Plaintiff(s)

**Case Number Pending**
**Complaint**
**Jury Demand**

v.

**Defendants as Follows:**

**SERVE TO:**

Scott A. Curry, in his professional and personal capacity
103 W Lincoln Boulevard
Libby, Mt 59923

TLC Engineering, PE, LLC
103 W Lincoln Boulevard
Libby, Mt 59923

Teresa L. Curry in her professional and personal capacity
TLC Engineering
103 W Lincoln Boulevard
Libby, Mt 59923

Joseph Barcomb  in his professional and personal capacity
TLC Engineering
103 W Lincoln Boulevard
Libby, Mt 59923

1



Donald C. Hillard  in his professional and personal capacity
TLC Engineering
103 W Lincoln Boulevard
Libby, Mt 59923

Kimberley A. Remick, in her professional and personal capacity
103 W Lincoln Boulevard
Libby, Mt 59923

Remick LLC
103 W Lincoln Boulevard
Libby, Mt 59923

Josh Tallmadge, in his professional and personal capacity
103 W Lincoln Boulevard
Libby, Mt 59923

Tallmadge GIS and Drafting LLC
16365 Bull Lake Road
Troy, MT 59935

Cynthia B. Miller, in her professional and personal capacity
103 W Lincoln Boulevard
Libby, Mt 59923

Glacier Insurance
TLC Insurance Provider
PO Box 1510
806 W 9th St
Libby, Mt 59923

CBIC Contractor Bonding and Insurance Company
TLC Insurance Provider
CBIC, 2999 N. 44th Street, Suite 450,
Phoenix, AZ 85018

Ronald Nelson, in his Professional and Personal capacity
700 Stone Mountain Road
Rexford, Montana 59930

Nelson Construction, Montana Construction Business, Mold Remediation
700 Stone Mountain Road
Rexford, Montana 59930

Randy Brosten, in his professional and personal capacity
P.O. BOX 980
Kalispell, MT 59903-0980

Antonich Adjusters Inc - Montana
P.O. BOX 980
Kalispell, MT 59903-0980

Christopher Yonge
P.O. BOX 980
Kalispell, MT 59903-0980

Judy Kirby, in her professional and personal capacity
1000 Banks Draw
Rexford, MT 59930

Bruce Kirby, in his professional and personal capacity
1000 Banks Draw
Rexford, MT 59930

Whitefish Credit Union
P.O. Box 37
300 Baker Ave
Whitefish, MT 59937

Ray Fauth, in his professional and personal capacity
P.O. Box 37
300 Baker Ave
Whitefish, MT 59937

Noel Appraisals
PO Box 1977
Whitefish, Montana 59937

Martha Noel
PO Box 1977
Whitefish, Montana 59937

Scott Rumble
Box 596
Eureka, Montana 59917

Abel Enginneering Inc.
212 Segiah Way
Kalispell, MT 59901

Tom Abel in, his professional and personal capacity
212 Segiah Way
Kalispell, MT 59901

Century 21 Land Office Eureka Montana
PO Box 1791
200 Dewey Ave
Eureka, MT 59917

Century 21 Real Estate LLC
Realogy Holdings Corp.
1 Campus Drive
Parsippany Troy Hills, NJ 07054

Mike Workman, in his professional and personal capacity
PO BOX 1289
Eureka, MT 59917

Shannon Wolleat, in her professional and personal capacity
PO BOX 2083
311 Dewey Ave
Eureka, Mt 59917

First American Title
PO BOX 2083
311 Dewey Ave
Eureka, Mt 59917

Kathleen Schulte, in her professional and personal capacity
Ex-CEO Northwest Montana Associaton of Realtors®
110 Cooperative Way
Kalispell, MT 59901

NMAR, Kalispell Montana
Northwest Montana Associaton of Realtors®
110 Cooperative Way
Kalispell, MT 59901

Tiffin Hall Law Office
124 Riverside
Suite 101
Eureka, MT 59917

J. Tiffin Hall
124 Riverside
Suite 101
Eureka, MT 59917

30.) Scott Insurance 1 - CBIC ?

31.) Scott Insurance 2 - other

32.) Nelson Construction Montana, Insurance Provider (Pending Defendant Name)

33.) First American Title Insurance Provider (Pending Defendant Name)

34.) Century 21 Real Estate LLC Insurance Provider (Pending Defendant Name)

35.) Century 21 Land Office Eureka Montana Insurance Provider (Pending Defendant Name)

36. ) **1 - 50 John and Jane Does**

# Cause of Action

1.) Section 28:1332bc Diversity - Breach of Contract

2.) 28:1332ri Diversity-Racketeering (RICO) Act

3.) Intentional Misrepresentation

4.) Civil Conspiracy

5.) Fair Debt Collection Practices Act (FDCPA)

6.) Consumer Protection Act

7.) 28:1332ds Diversity - Contract Dispute

8.) Truth in Lending Act (TILA)

9.) 23:1441 Contract Real Estate

10.) 28:1332fr Diversity - Fraud

11.) 28:1332pd Diversity - Property Damage

12.) 28:1332pi Diversity Personal Injury

13.) 28:1332pl Diversity Product Liability

14.) 18:0241 Conspiracy Against Citizen Rights

15.) 28:1343 Violation of Civil Rights

16.) 28:1332ds Diversity - Contract Dispute

17. **Negligence**

18.) **Fraud**

19.) **Implied Covenant of Good Faith and Fair Dealing**

20.) **Punitive Damages**

21.) **Breach of Duty, Breach of Care**

22.) **Real Estate Settlement Procedures Act (RESPA), 12 USC 1707, TITLE 12--BANKS AND BANKING, CHAPTER 13--NATIONAL HOUSING, USCTitle 42--The Public Health and Welfare Chapter 69, Sec. 5301, 5308, 5309.**

23.) **FDIC Law, Regulations, Related Acts**

24.) **MONTANA CREDIT UNION ACT**

25.) **Toxic Mold Safety and Protection Act of 2002" (H.R. 5040)**

## Parties

1.) Ronald Nelson, Montana Resident

2.) Nelson Construction, Montana Construction Business, Mold Remediation

3.) Randy Brosten,

4.) Antonich Adjusters Inc - Montana

5.) Christopher Yonge

6.) Scott A. Curry, in his professional and personal capacity

7.) TLC Engineering, PE, LLC

8.) Kimberley A. Remick,

9.) Remick LLC

10. )Josh Tallmadge

11.) Cynthia B. Miller

12.) Judy Kirby

13.) Bruce Kirby

14.)Whitefish Credit Union

15.) Ray Fauth,

16.) Noel Appraisals

17.) Martha Noel

18.) Scott Rumble

19.) Abel Enginneering Inc.

20.) Tom Abel

21.) Century 21 Land Office Eureka Montana

22.) Century 21 Real Estate LLC
    Realogy Holdings Corp.

23.) Mike Workman

24.) Shannon Wolleat

25.) First American Title

26.) Kathy Schulte,

27.) Northwest Montana Association of Realtors

28.) Tiffin Hall Law Office

29.) J. Tiffin Hall

30.) CBIC Contractor Bonding and Insurance Company

31.) Glacier Insurance

32.) Nelson Construction Montana, Insurance Provider (Pending Defendant Name)

33.) First American Title Insurance Provider (Pending Defendant Name)

34.) Century 21 Real Estate LLC Insurance Provider (Pending Defendant Name)

35.) Century 21 Land Office Eureka Montana Insurance Provider (Pending Defendant Name)

## **Jury Demand**

I, Plaintiff Crystal Cox hereby Demand a Trial by Jury regarding this complaint and cause of action.

## **Jurisdiction and Venue**

Plaintiff appears in this action **"In Propria Persona"** and moves this court to proceed in Forma Pauperis, Plaintiff has attached a motion to proceed in Forma Pauperis.

This action arises as a result of Defendant(s) violation of Plaintiff's constitutional rights and, accordingly, this Court has subject matter jurisdiction under 28 U.S.C. 1331, 1343, and 1367, as well as 42 U.S.C. 1983.

This action arises as a result of Defendant(s) violation of Plaintiff's Civil Rights, Constitutional Rights and alleged conspiracy among media, reporters, radios, attomeys and law firms in which do business in California.

This case involved Defendant's of multiple states. Helena Montana is the place where these Montana Businesses, Real Estate Agents, Engineers, Banking Industry Defendants.. are licensed and governed by the laws, rules and regulations of through the State of Montana.

Plaintiff is a Resident of Washington State

28 U.S.C. § 1332 (diversity) because all the defendants live in a different state than plaintiff

## General Allegation

Plaintiff Crystal L. Cox re-alleges, and fully incorporate all previous paragraphs..

Plaintiff Crystal L. Cox Alleges as Follows upon knowledge and belief.

Plaintiff Crystal L. Cox Alleges that defendants have conspired against Plaintiff's rights and this has caused Plaintiff irreparable harm. Plaintiff Crystal L. Cox Alleges that she is entitled to all relief allowed by law.

Plaintiff Crystal L. Cox Alleges a breach of contract with Defendants in which has caused Plaintiff irreparable harm.

Plaintiff Crystal L. Cox Allege that defendants have engaged in the causes of action cited in this complaint and that these actions have caused damage to Plaintiff. This damage is monetary loss, health issues, loss of home, loss of business, loss of reputation, loss of assets, loss of clients and customers, life endangerment, duress, and loss of quality of life.

Plaintiff Crystal Cox alleges that Defendants endangered her life, and her quality of life with total disregard, complete breach of duty, breach of contract and negligence.

Plaintiff Crystal L. Cox Alleges Defendants engaged in Civil Conspiracy to cover up a known Mold Infestation of home located at 1 Drumlin Lane, Eureka, MT.

Upon knowledge and Belief, Plaintiff Crystal L. Cox Alleges that defendants have engaged in conspiratorial patten and history that violates RICO Laws, in which have caused direct harm to Plaintiff

Upon knowledge and Belief, Plaintiff Crystal L. Cox Alleges that Defendant Scott Curry, Montana Licensed Engineer of Defendant TLC Engineering violated contractual duties, acted with negligence, committed fraud, falsified Mold testing data, violated breach of care and breach of duty laws, violated the Consumer Protection act, caused personal and property damage to Plaintiff, acted in conspiracy with others to commit fraud and actions

that directly harmed Plaintiff. Plaintiff Crystal L. Cox Alleges that she is entitled to compensation of these damages, punitive damages and all relief allowable by law.

Plaintiff Crystal L. Cox Alleges that Defendant Scott Curry, Montana Engineer, of Defendant TLC Engineering conspired with Defendant TLC, Defendant Kimberley A. Remick, Defendant Remick LLC, Defendant Josh Tallmadge, Defendant Tallmadge GIS and Drafting LLC and Defendant Cynthia B. Miller. And they are liable for the damage caused to Plaintiff. And that TLC's insurance provider TLC Glacier Insurance of Libby MTand CBIC Contractor Bonding and Insurance Company are liable to damage done to Plaintiff. As is TLC LLC members Defendants Donald C. Hillard, Teresa L. Curry, and Joseph Barcomb.

Upon knowledge and Belief, Plaintiff Crystal L. Cox Alleges that Defendant Scott Curry, Defendant TLC Engineering, Defendant Kimberley A. Remick, Defendant Remick LLC, and John and Jane Doe Defendants knowingly falsified Mold testing data, lab reports and mold technician inspection results in conspiracy to financially harm Plaintiff, ruin Plaintiff's business, endanger Plaintiff's life and thereby has caused Plaintiff irreparable harm and suffering..

Upon knowledge and Belief, Plaintiff Crystal L. Cox Alleges that Defendant Scott Curry, Defendant TLC Engineering, Defendant Kimberley A. Remick, Defendant Remick LLC, and John and Jane Doe Defendants billed Plaintiff for Mold Testing, billed Plaintiff for Mold Lab test and related drawings and report, yet did not perform these test, lied about the results of these tests and / or falsified data in a way as to not disclose a massive Mold infestation causing irreparable, immeasurable harm to Plaintiff.

Upon knowledge and Belief, Plaintiff Crystal L. Cox Alleges that the above actions by Defendant Scott Curry, Defendant TLC Engineering, Defendant Kimberley A. Remick, Defendant Remick LLC, and John and Jane Doe Defendants caused Plaintiff to sign a settlement agreement on subject property in which Defendants were PAID to test for MOLD, based on the results given to Plaintiff by Defendant Scott Curry, Defendant TLC Engineering, Defendant Kimberley A. Remick, Defendant Remick LLC, and John and Jane Doe Defendants.

Plaintiff RELIED, fully on the Mold Testing of Defendant Scott Curry, Defendant TLC Engineering, Defendant Kimberley A. Remick, Defendant Remick LLC, and John and Jane Doe Defendants to make a decision on a legal case in which cost Plaintiff approximately $100,000 in litigation fees, of which over $50,000 of this money went to Defendant Scott Curry, Defendant TLC Engineering, Defendant Kimberley A. Remick, Defendant Remick LLC, and John and Jane Doe Defendants to perform engineered, forensics inspections of Plaintiff's home located in Eureka Montana. Approx. $8000 of the money Plaintiff paid to Defendant Scott Curry, Defendant TLC Engineering, Defendant Kimberley A. Remick, Defendant Remick LLC, Defendant Josh Tallmadge, Defendant Cynthia B. Miller WAS directly for Mold Testing, Mold Technician hours, Mold lab results, and mold reports.

Defendant Scott Curry, Defendant TLC Engineering, Defendant Kimberley A Remick, Defendant Remick LLC, were paid to test subject property at 1 Drumlin Lane Eureka Montana, for MOLD. Defendant Scott Curry, claimed Mold expertise to Plaintiff, billed Plaintiff for Mold Testing and came up with no mold at subject property. (1 Drumlin Lane Eureka Montana)

Plaintiff has recently found records, videos, and information that show / prove, that the 1 Drumlin Lane home indeed had / has Stachybotrys mold, which is a well known toxic black mold.

Upon Knowledge and belief, In the Fall of 2006, just after Defendant Scott Curry, Defendant TLC Engineering told Plaintiff to move out of this home due to structural safety and possible toxic mold related issues, as seen in letter from Defendant Scott Curry, Defendant TLC Engineering December 8th 2006 regarding Plaintiff moving out of the home upon his request October 1st of 2006, Plaintiff told Defendant Scott Curry that Defendant Judy Kirby of Defendant BJCC inspections had Told Plaintiff Cox that the home had Stachybotrys mold, according to a prior inspection she knew of.

Defendant Judy Kirby gave no further details to Plaintiff on that matter and in fact Defendant Judy Kirby of Defendant BJCC inspections performed a home inspection on the home for and in civil conspiracy with Defendant J. Tiffen Hall, just weeks before Plaintiff agreed to a settlement and failed to disclose her knowledge of Mold related issues in that inspection, thereby causing Plaintiff irreparable harm and damage. Plaintiff Crystal Cox alleges this to be deliberate, knowing fraud on the courts as Judy Kirby knew the home had a MOLD infestation.

Plaintiff was forced from the home, under massive duress and Defendant Whitefish Credit Union seized the home at some point, therefore Plaintiff's records, files, videos, data were lost, stored for years and this matter is now, for the first time provable to Plaintiff and therefore Plaintiff is filing this legal action many years later, as Upon knowledge and Belief of Plaintiff Crystal L. Cox there is no statute of limitation on fraud, and related matters in this complaint.

Upon knowledge and Belief, Plaintiff Crystal L. Cox Alleges that Plaintiff would not have agreed to a settlement offer on said property for less than replacement of the home, cost of moving, rentals, litigation, health costs, and punitive damages had there been MOLD found in the chimney BEFORE signing the settlement document. This amount, at that time would have been no less than $1.8 million replacement and an additional million at the very least for the rest of the damages suffered to Plaintiff, this on top of the price to remove the home and costs of litigation, forensics engineers, attorneys and other related cost. Note, Plaintiff

12

Crystal Cox did, in fact sign the Settlement agreement in this matter, an agreement of which had the report, photos, words, data of Engineer, Mold Expert Defendant Scott Curry, Defendant TLC Engineering, Defendant Kimberley A. Remick ( Mold Technician), and Defendant Remick LLC. An agreement of which NO Mold was disclosed, found or factored into the settlement agreement signed by Plaintiff in this legal matter.

Upon knowledge and Belief, Plaintiff Crystal L. Cox Alleges that due to Defendant's not finding, reporting on, disclosing mold issues of the home, Plaintiff RELIED on this as scientific fact and therefore signed a settlement agreement of which she would NEVER have signed if it were not for the report of Engineer, Mold Expert Defendant Scott Curry, Defendant TLC Engineering, Defendant Kimberley A. Remick ( Mold Technician), and Defendant Remick LLC. And there, allegedly being no Mold in the home per this costly, scientific, expert MOLD TESTING provide by Engineer, Mold Expert Defendant Scott Curry, Defendant TLC Engineering, Defendant Kimberley A. Remick ( Mold Technician), and Defendant Remick LLC, and billed by Defendant TLC Engineering and Defendant Cynthia B. Miller.

Upon knowledge and Belief, Plaintiff Crystal L. Cox Alleges that Montana Engineer, Mold Expert Defendant Scott Curry, Defendant TLC Engineering, Defendant Kimberley A. Remick ( Mold Technician), and Defendant Remick LLC deliberately, maliciously, intentionally misled Plaintiff, as it appears that photos have been taken inside the chimney by Defendant Scott Curry, Defendant TLC Engineering, Defendant Kimberley A. Remick, Defendant Remick LLC, and John and Jane Doe Defendants as shown in settlement agreement.

Photos of the inside of the Chimney, in the Settlement Agreement, of which was the reason Plaintiff agreed to the settlement agreement, yet it appears that Defendants did not go into the chimney, did not perform the MOLD tests, and created fraudulent structural data and mold reports. As the chimney was clearly FULL of TOXIC black mold.

Upon knowledge and Belief, Plaintiff Crystal L. Cox Alleges that this nearly $50,000 forensics report was fraudulent, and caused Plaintiff irreparable, immeasurable harm.

Montana Engineer, Mold Expert Defendant Scott Curry, Defendant TLC Engineering, Defendant Kimberley A. Remick ( Mold Technician), and Defendant Remick LLC, led Plaintiff to belief that they had, INDEED, entered this massive 10x10x30 chimney and had taken photos, preformed Mold tests inside of the chimney and that Defendant Scott Curry, Defendant TLC Engineering along with Defendant Josh Tallmadge, Defendant Tallmadge GIS and Drafting LLC and Defendant Cynthia B. Miller performing massive, detailed forensic drawings of the home.

Upon knowledge and Belief, This led Plaintiff to believe that Defendants Defendant Josh Tallmadge, Defendant Tallmadge GIS and Drafting LLC had entered the Chimney. The reports spoke of structure issues inside the chimney, the bills showed Mold Technician hours and lab hours, and yet after the Plaintiff signed the settlement agreement, and hired a contractor to fix the structure issues, Plaintiff discovered a chimney full of Stachybotrys mold, which is a well known toxic black mold just as Defendant Judy Kirby had told Plaintiff Crystal Cox, and Plaintiff had alerted Defendant Scott Curry at that time as to needing to hire a Mold Expert for extensive testing. Defendant Scott Curry already discussed concerns of Mold issues in prior reports, letter and billing to Plaintiff. However this information regarding the known infestation of toxic black mold, Stachybotrys mold, caused a reaction in Plaintiff to demand and pay for a highly technical testing process. Of which, at that time, Defendant Scott Curry claimed he was an expert in, as the record shows.

Upon knowledge and Belief, Defendant Scott Curry, Defendant TLC Engineering, his mold technician Defendant Kimberley A Remick of Defendant Remick LLC performed heat analysis testing, mold testing inside walls, and a massive, costly scientific MOLD inspection of the home, and mainly, extensively of the KNOWN problem area which was the epicenter of the legal action and danger of home to it's occupants, which was the massive chimney.

Plaintiff hired Defendant Scott Curry, Defendant TLC Engineering, his mold technician Defendant Kimberley A Remick of Defendant Remick LLC per his expertise, and come to find out the chimney was full of MOLD and the Plaintiff had no recourse at the time it was discovered, as all the settlement agreement money was used on fixing structural issues, with no knowledge of MOLD. Plaintiff had no money, no place to live, and no way to fight back. Just after this all records were lost for years, and have been recently discovered.

Plaintiff had moved back into the home and became very ill unknowingly. Months prior to threats of foreclosure Plaintiff had a buyer for said property, and an offer of on the home. Yet buyer noted that the Chimney leaked, and there were massive water stains on new construction, the chimney had still leaked after massive amounts of money were paid to Defendant Ron Nelson of Defendant Nelson Construction to fix the issue.

Upon knowledge and Belief, Defendant Ron Nelson of Defendant Nelson Construction billed approx. $118,000 in the first 3 months after Plaintiff Crystal Cox hired him, yet he had not fixed the leak and simply used up all of Plaintiff's settlement agreement money. This caused loss of a buyer, loss of being able to insure the home, health risk, massive stress, and eventually the loss of the home and quality of life of Plaintiff. Defendant Ron Nelson of Defendant Nelson Construction acted with malice and knowingly falsified information to Plaintiff's insurance company and to Plaintiff, this has caused irreparable harm of which Defendant Ron Nelson of Defendant Nelson Construction is liable to Plaintiff for.

14

Upon knowledge and Belief, the settlement money was gone entirely, In June of 2009 and the roof was STILL LEAKING, though by this point, Defendant Ron Nelson of Defendant Nelson Construction was paid approx. $200,000 to repair the structural defects stemming from the lawsuit settlement agreement money, originated at that Chimney.

Defendant Ron Nelson, Defendant Nelson Construction filed an insurance claim through our home insurance, by he himself contacting Defendant Randy Brosten insurance adjuster of Defendant Antonich Adjusters Inc owned by Defendant Christopher Yonge.

Defendant Ron Nelson, Defendant Nelson Construction worked with Plaintiff Cox and Defendant Randy Brosten on this issue, as the record shows.

Defendant Ron Nelson, Defendant Nelson Construction did not do the job he was under contract to do and in such committed fraud against Plaintiff and insurance company, in which led to massive stress of Plaintiff, loss of business, loss of home and immeasurable damage.

Defendant Ron Nelson, Defendant Nelson Construction opened several claims during this Mold Litigation project, so many that Plaintiff lost the ability to insure the home and was then in breach of the mortgage, per agreements with Defendant Whitefish Credit Union.

Upon knowledge and Belief, Plaintiff Crystal L. Cox Alleges that Defendant Ron Nelson, Defendant Nelson Construction conspired with Defendant Randy Brosten insurance adjuster of Defendant Antonich Adjusters Inc to commit fraud to Flathead Farmers insurance company, Ellingson Agency, the insurance provider for Plaintiff's home.

Upon knowledge and Belief, Plaintiff Crystal L. Cox Alleges that Defendant Ron Nelson, Defendant Nelson Construction had years of prior business relations with Defendant Randy Brosten insurance adjuster of Defendant Antonich Adjusters Inc and that Defendant Randy Brosten simply did as Defendant Ron Nelson asked of him, with no investigation into the matter at issue.

Upon knowledge and Belief, Plaintiff Crystal L. Cox Alleges that Defendant Ron Nelson, Defendant Nelson Construction either disclosed a chimney full of MOLD to Defendant Randy Brosten insurance adjuster of Defendant Antonich Adjusters Inc and they conspired to defraud the insurance company and the Plaintiff, or Defendant Ron Nelson, Defendant Nelson Construction simply lied to Defendant Randy Brosten insurance adjuster of Defendant Antonich Adjusters Inc. in stating that the chimney leak was a new issue and not disclosing that he was using the insurance money to mitigate MOLD in a chimney that he was hired to fix, years prior and had either not noticed the MOLD issue,

15

hid the MOLD issue or committed fraud against the Plaintiff of which he gave the original bid to the project in the name of and was hired by, as he was a family recommendation through Plaintiff Cox to the project.

Defendant Ron Nelson, Defendant Nelson Construction allegedly mitigated the MOLD, the buyer was lost. The home went into foreclosure that next year under Defendant Whitefish Credit Union soon after. In March of 2011, Plaintiff Cox contacted the buyer again to see if he was interested in buyer for a third the price he had offered in order to stop the home from being foreclosed upon. He was interested and made an offer to Plaintiff Cox. Upon a tour of the home, it was blatantly obvious that still in March of 2011 the roof leaked, and seemingly worse than ever.

Defendant Ron Nelson, Defendant Nelson Construction used all of the money obtained to fix the home through the signing of the settlement agreement by Plaintiff Cox, yet he never did fix the leak, the issue that caused the lawsuit to begin with. Defendant Ron Nelson, Defendant Nelson Construction caused irreparable harm and stress to Plaintiff. The last Plaintiff knows, the roof all around the chimney and attached beams still leak.

Defendant Ron Nelson, Defendant Nelson Construction acted with malice, intentional misrepresentation, breach of contract, fraud, breach of duty, breach of care, violations of the consumer protection act, diversity personal energy, product liability,civil conspiracy, negligence, Implied Covenant of Good Faith and Fair Dealing, and interfered with the insurance contracts and lending contracts causing harm to Plaintiff.

After Defendant Ron Nelson made Plaintiff Crystal Cox aware that this massive Chimney is / was infested with Stachybotrys mold, assured Plaintiff Cox that he had credentials in Mold Mitigation and was qualified and procured insurance money to mitigate this Mold. Plaintiff Crystal Cox made an in person visit to Defendant Ray Fauth of Defendant Whitefish Credit Union and updated him on the situation with the house, as she had done for years, as the record shows.

Plaintiff Crystal Cox emailed Defendant Ray Fauth of Defendant Whitefish Credit Union and oftentimes would stop into his office and see him in person to update him on the lawsuit, chances of settling, potential buyers and the financial status of the property and properties that were leveraged, regarding the subject property loan.

After the Mold Issue, and the possible buyer, Plaintiff Crystal Cox made an in person visit to Defendant Ray Fauth of Defendant Whitefish Credit Union and told him about the possible buyer, discussed renewing the loan on the home, as she often did, and informed him that the chimney had a Stachybotrys mold, black mold infestation. Defendant Ray Fauth of Defendant Whitefish Credit Union asked if the structure was fixed, and Plaintiff Crystal Cox told Defendant Ray Fauth of Defendant Whitefish Credit Union we had used the settlement agreement money to pay contractor Defendant Ron Nelson, Defendant Nelson Construction to fix the structure just as Defendant Ray Fauth of Defendant Whitefish Credit Union and I, Plaintiff Crystal Cox had

discussed prior and as Defendant Ray Fauth of Defendant Whitefish Credit Union recommended we do.

Plaintiff Cox had made such an in person visit to Defendant Ray Fauth of Defendant Whitefish Credit Union, prior to her interview / initial bid consult with Defendant Ron Nelson, and after Plaintiff Crystal Cox signed the settlement agreement for money to fix the house from a legal action against the prior seller.

Defendant Ray Fauth of Defendant Whitefish Credit Union advised Plaintiff Cox that it would be best to use the settlement agreement money to fix the structural deficiencies of the home rather than to pay down the loan on the home. Plaintiff Cox had initiated the loan dealings for the home starting in January of 2006, and set the loan up through Defendant Ray Fauth of Defendant Whitefish Credit Union, as the records show. Defendant Ray Fauth of Defendant Whitefish Credit Union knew that Plaintiff Cox paid the interest on the loan and was treated by Defendant Ray Fauth of Defendant Whitefish Credit Union as a full owner from the first point of contact on the loan. Therefore, Plaintiff Cox, kept Defendant Ray Fauth of Defendant Whitefish Credit Union involved every step of the way.

Upon knowledge and belief, In regard to the MOLD issue Defendant Ray Fauth of Defendant Whitefish Credit Union asked me, Plaintiff Cox if the MOLD had been mitigated?

Plaintiff Cox told Defendant Ray Fauth of Defendant Whitefish Credit Union that Defendant Ron Nelson, Defendant Nelson Construction assured Plaintiff Cox that he was certified in Mold Mitigation and that he had procured insurance money from the home to mitigate the MOLD, yet he told the insurance company it was a new problem and told us he would handle it. We really had no idea what Defendant Ron Nelson told Defendant Randy Brosten insurance adjuster of Defendant Antonich Adjusters Inc.when they met on site in person over the insurance claim.

Plaintiff does now know that Defendant Ron Nelson, Defendant Nelson Construction opened several claims over this issue and used Defendant Randy Brosten insurance adjuster of Defendant Antonich Adjusters Inc. Plaintiff knows this due to denial of home insurance because of Defendant Ron Nelson opening several claims and stating to Plaintiff that it was the same claim.

Defendant Ron Nelson, Defendant Nelson Construction led Plaintiff to believe it was one new claim and a new problem, this became obvious as to not being true, AFTER the insurance money was procured, the settlement money was gone and the Chimney had been entered by Defendant Ron Nelson, Defendant Nelson Construction and black Mold was found.

Turns out it was not a new problem as Defendant Ron Nelson, Defendant Nelson Construction TOLD Defendant Randy Brosten insurance adjuster of Defendant Antonich Adjusters Inc but part of the old problem of which Defendant Ron Nelson, Defendant Nelson Construction had already been paid over $200,000 to fix, and it also became blatantly obvious at this point that Defendant

17

Ron Nelson, Defendant Nelson Construction had committed fraud against the Plaintiff, had violated breach of contract laws, misrepresented himself, was in violation of the Consumer Protection Act, had conspired with other Defendants to secure money, had falsified information, and had never entered the chimney prior as he led Plaintiff to do and was hired by Plaintiff to do.

Upon knowledge and belief, On this visit to Defendant Ray Fauth of Defendant Whitefish Credit Union by Plaintiff Cox, after informing Defendant Ray Fauth of the Mold infestation, he simply stated that if Plaintiff Cox felt Nelson Construction was qualified to mitigate the Mold issue and had done so, then he had no issue with it. At this time I also told him that Leslie Turner did not know about the infestation, as she was not home that day and Defendant Ron Nelson, Defendant Nelson Construction suggested that Leslie Turner did not have to know. Plaintiff Cox agreed, as the money to fix the home was entirely spent, the settlement agreement was signed, and Leslie Turner had dealt with a massive amount of stress over years, and the choice was made to simply not tell her and to mitigate the Mold. Defendant Ray Fauth of Defendant Whitefish Credit Union, Defendant Ron Nelson, Defendant Nelson Construction and Plaintiff Cox were the only ones who knew of the Mold issue. Plaintiff Cox was unable to prove the events that took place until recently upon find the evidence in this matter..

Upon knowledge and belief, Having since lost the home to the predatory lending practices of Defendant Ray Fauth of Defendant Whitefish Credit Union AND Plaintiff Cox having been in contact with Leslie Turner after 3 years, Plaintiff Cox realized that they both had similar health issues over years and that possibly there was fraud involved with situation, and after years of Plaintiff Cox's belongings being in storage, she found the documentation of the case and videos Plaintiff Cox had taken of the Mold infestation, and therefore this complaint is being filed now as the evidence is available to provide to this court.

Plaintiff Crystal Cox has contracts with Defendant Ron Nelson, Defendant Nelson Construction, bids in her name. Plaintiff Crystal Cox has emails with Defendant Ray Fauth of Defendant Whitefish Credit Union, Defendant Ron Nelson, Defendant Nelson Construction, and with Defendant Scott Curry, Defendant TLC Engineering. Plaintiff Crystal Cox has video documentation of Mold, and billig from Defendant Scott Curry, Defendant TLC Engineering for Mold Tests, Lab Test, Mold Technicians. Until now, Plaintiff Crystal Cox did not have access to all of this documentation due to the loss of her home, displacement and extreme personal circumstances.

Upon knowledge and Belief, Plaintiff Crystal L. Cox Alleges that Defendant Cynthia B. Miller conspired with Douglas Law Firm and Defendant TLC Engineering in fraudulent billing to Plaintiff, in which caused Plaintiff harm.

Upon knowledge and Belief, Plaintiff Crystal L. Cox Alleges that Defendant Josh Tallmadge, Defendant Tallmadge GIS and Drafting LLC is in violation of breach of contract, breach of care, breach of duty, negligence, fraud, personal and property injury,

18

civil conspiracy, intentional misrepresentation, and has aided and abetted other defendants. Defendant Josh Tallmadge, Defendant Tallmadge GIS and Drafting LLC created engineered drawings of Plaintiff's home, drawings of which were of the entire structure, with reports emphasizing on the chimney and it's issue of load bearing and structure problems.

Upon knowledge and Belief, Plaintiff RELIED on these drawings and their accuracy in agreeing to sign a major financial settlement agreement. Defendant Josh Tallmadge, Defendant Tallmadge GIS and Drafting LLC committed fraud, as either Defendant Josh Tallmadge, Defendant Tallmadge GIS and Drafting LLC did not enter the chimney structure and provide accurate drawings or Defendant Josh Tallmadge, Defendant Tallmadge GIS and Drafting LLC did enter the structure and FAILED to notify TLC Engineering and Plaintiff of an obvious Mold Infestation. Defendant Josh Tallmadge, Defendant Tallmadge GIS and Drafting LLC was paid a large amount of money to create engineered drawings of this home, and seems to have lied to Plaintiff in regard to the accuracy of said drawings, thereby causing Plaintiff harm of which Defendant Josh Tallmadge, Defendant Tallmadge GIS and Drafting LLC and other Defendants are liable for.

Upon knowledge and Belief, Plaintiff Crystal L. Cox Alleges that Defendant Randy Brosten of Antonich Adjusters Inc. conspired with Defendant Ron Nelson, Defendant Nelson Construction in civil conspiracy, breach of contract, negligence, breach of duty, fraud, intentional misrepresentation and more that cause Plaintiff harm.

Upon knowledge and Belief, Plaintiff Crystal L. Cox Alleges that Defendant Judy Kirby, Defendant Bruce Kirby, Defendant BJCC Inspections violated breach of contract, breach of care, breach of duty, fraud, non-disclosure laws, consumer protection act, fraud, conspiracy against rights, violation of civil rights, property damage, and civil conspiracy.

Upon knowledge and Belief, Plaintiff Crystal L. Cox Alleges that Defendant Judy Kirby knew of prior home inspections in which reported toxic black mold on the subject property and yet Defendant Judy Kirby, Defendant Bruce Kirby, Defendant BJCC Inspections conspired with Defendant Tiffin Hall Law Office, Defendant J. Tiffin Hall to cover up the known mold issue, and created an inspection report that Defendant Tiffen used in reaching a settlement agreement of which Plaintiff relied upon and therefore signed the settlement agreement and was irreparable, immeasurably harmed. And therefore entitled to financial relief.

Upon knowledge and Belief, Plaintiff Crystal L. Cox Alleges that Defendant Scott Rumble, home appraiser acted in civil conspiracy, misrepresentation, neglect, breach of duty, breach of care, and breach of contract. A home appraiser should have looked inside a chimney of this size. Per the appraisal documents it is the duty of an appraiser to look for

environmental hazards. Had Defendant Scott Rumble of Defendant Noel Appraisals looked in the Chimney, Plaintiff would not have bought said property in the first place. Upon knowledge and Belief, Plaintiff Crystal L. Cox Alleges that Defendant Tom Abel of Defendant Abel Engineering Inc. should have found MOLD in the chimney and reported this Mold. Mold and structure issues are stated in the forensics engineered reported, yet Defendant Tom Abel did not find black mold and report this massive liability. Instead Defendant Tom Abel conspired with Defendant Tiffin Hall Law Office, Defendant J. Tiffin Hall and performed an alleged forensics engineered report without going into this massive structure that had been reported to be the issue of the entire legal action.

Plaintiff Called Defendant Tom Abel when roof first started leaking, Defendant Tom Abel said call a Roofer. Defendant Tom Abel had knowledge of issue, and later worked for other side of legal case, and yet with full knowledge of water damage, and chimney issue, did not go inside of the chimney, Plaintiff Cox alleges this to be fraudulent, negligent and a violation of law that caused Plaintiff Harm.

Upon knowledge and Belief, Plaintiff Crystal L. Cox Alleges that Defendant Century 21 Land Office Eureka Montana, Defendant Century 21 Real Estate LLC, Defendant Mike Workman, Defendant Shannon Wolleat, Defendant First American Title, Defendant Kathy Schulte, and Defendant Northwest Montana Associaton of Realtors (NMAR) conspired to cover up a mold inspection, home inspection, or engineered inspection in which disclosed defects in the home, and mold issues. Records show sail fails on the property that are unaccountable for. Plaintiff Cox alleges this to be fraudulent, negligent and a violation of law that caused Plaintiff Harm.

Defendant Judy Kirby told Plaintiff Cox of a prior inspection where black mold was found in the home, yet refused to give plaintiff documentation or the names of parties involved in the mold inspection. Defendant Shannon Wolleat, Defendant First American Title had a sticky note on a file that scheduled an inspection that was never disclosed to Plaintiff. Plaintiff Cox alleges this to be fraudulent, negligent and a violation of law that caused Plaintiff Harm.

Upon knowledge and Belief, Plaintiff Crystal L. Cox Alleges that these defendants acted with malice and intentional misrepresentation, breach of contract, breach of duty of care, fraud, consumer protection violations, Conspiracy Against Citizen Rights, Negligence, Implied Covenant of Good Faith and Fair Dealing and all causes of action in this case are affected by defendants actions in which caused Plaintiff irreparable harm.

**Plaintiff appears in this action "In Propria Persona" and asks that her points and authorities relied upon herein, and issues raised herein, must be addressed "on the merits" and not simply on her Pro Se Status.**

Oftentimes courts do not take Pro Se Litigants serious. I, Plaintiff Crystal Cox wish to be taken serious and to not have my allegation dismissed.

"Court errs if court dismisses pro se litigant without instructions of how pleadings are deficient and how to repair pleadings." Plaskey v CIA, 953 F .2nd 25. The Court granted such leniency, or "liberal construction," to pro se pleadings against the backdrop of Conley v. Gibson's undemanding "no set of facts" standard. ( See Conley v. Gibson, 355 U.S. 41, 45-46 (1957) ("[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."), abrogated by Bell Atl. Corp. v. Twombly, 550 U.S. 544, 561-63 (2007). This standard epitomized the notice-pleading regime envisioned by the drafters of the Federal Rules, who emphasized discovery as the stage at which a claim's true merit would come to light, rather than pleading. See Christopher M. Fairman, The Myth of Notice Pleading, 45 ARIZ. L. REV. 987, 990 (2003) ("With merits determination as the goal, the Federal Rules create a new procedural system that massively deemphasizes the role of pleadings.").

The Court's failure to explain how pro se pleadings are to be liberally construed. ( See Bacharach & Entzeroth, supra note 7, at 29-30 (asserting that because the Supreme Court never defined the "degree of relaxation" afforded pro se pleadings in comparison to the liberal notice pleading standard applicable to all litigants, lower courts adopted different iterations of the rule). ~ .. indicates its belief that the standard was already lenient enough to render a detailed articulation of the practice unnecessary to prevent premature dismissal of meritorious cases. However, with Bell Atlantic Corp. v. Twombly ( 550 U.S. 544 (2007). and Ashcroft v. Iqbal ( 129 S. Ct. 1937 (2009) retiring the "no set of facts" standard and ratifying the means by which lower courts dismissed more disfavored cases under Conley, ( See generally Richard L. Marcus, The Revival of Fact Pleading Under the Federal Rules of Civil Procedure, 86 COLUM. L. REV. 433, 435-37 (1986) (explaining how the reemergence of fact pleading resulted from lower courts' refusals to accept conclusory allegations as sufficient under the Federal Rules in particular categories of suits).

.. liberal construction as presently practiced is not—if it ever was—sufficient to protect pro se litigants' access to courts. The new plausibility standard ( See Twombly, 550 U.S. at 570 (requiring a complaint to allege "enough facts to state a claim to relief that is plausible

on its face").. with which courts now determine the adequacy of complaints disproportionately harms pro se litigants. ( See Patricia W. Hatamyar, The Tao of Pleading: Do Twombly and Iqbal Matter Empirically?, 59 AM. U. L. REV. 553, 615 (2010) (observing a substantially greater increase in the rate of dismissal of pro se suits than represented suits post-Iqbal).

"Pro se complaint[s], 'however inartfully pleaded,' [are] held to 'less stringent standards than formal pleadings drafted by lawyers. ( Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (per curiam)).

HAINES v. KERNER, ET AL. 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652. Whatever may be the limits on the scope of inquiry of courts into the internal administration of prisons, allegations such as those asserted by petitioner, however inartfully pleaded, are sufficient to call for the opportunity to offer supporting evidence. We cannot say with assurance that under the allegations of the pro se complaint, which we hold to less stringent standards than formal pleadings drafted by lawyers, it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). See Dioguardi v. Durning, 139 F.2d 774 (CA2 1944).

ESTELLE, CORRECTIONS DIRECTOR, ET AL. v. GAMBLE 29 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251. We now consider whether respondent's complaint states a cognizable 1983 claim. The handwritten pro se document is to be liberally construed. As the Court unanimously held in Haines v. Kerner, 404 U.S. 519 (1972), a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id., at 520-521, quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)

BALDWIN COUNTY WELCOME CENTER v. BROWN 466 U.S. 147, 104 S. Ct. 1723, 80 L. Ed. 2d 196, 52 U.S.L.W. 3751. Rule 8(f) provides that " pleadings shall be so construed as to do substantial justice." We frequently have stated that pro se pleadings are to be given a liberal construction.

HUGHES v. ROWE ET AL. 449 U.S. 5, 101 S. Ct. 173, 66 L. Ed. 2d 163, 49 U.S.L.W. 3346. Petitioner's complaint, like most prisoner complaints filed in the Northern District of Illinois, was not prepared by counsel. It is settled law that the allegations of such a complaint, "however inartfully pleaded" are held "to less stringent standards than formal pleadings drafted by lawyers, see Haines v. Kerner, 404 U.S. 519, 520 (1972). See also Maclin v. Paulson, 627 F.2d 83, 86 (CA7 1980); French v. Heyne, 547 F.2d 994, 996 (CA7

1976). Such a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Haines, supra, at 520-521. And, of course, the allegations of the complaint are generally taken as true for purposes of a motion to dismiss. Cruz v. Beto, 405 U.S. 319, 322 (1972).

Both the right to proceed pro se and liberal pleading standards reflect the modern civil legal system's emphasis on protecting access to courts. ( See, e.g., Phillips v. Cnty. of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008) ("Few issues . . . are more significant than pleading standards, which are the key that opens access to courts."); Drew A. Swank, In Defense of Rules and Roles: The Need to Curb Extreme Forms of Pro Se Assistance and Accommodation in Litigation, 54 AM. U. L. REV. 1537, 1546 (2005) (noting that "[o]pen access to the courts for all citizens" is one of the principles upon which the right to prosecute one's own case is founded).

**Self-representation has firm roots in the notion that all individuals, no matter their status or wealth, are entitled to air grievances for which they may be entitled to relief.** ( See Swank, supra note 1, at 1546 (discussing the importance of self-representation to the fundamental precept of equality before the law).

Access, then, must not be contingent upon retaining counsel, lest the entitlement become a mere privilege denied to certain segments of society. Similarly, because pleading is the gateway by which litigants access federal courts, the drafters of the Federal Rules of Civil Procedure purposefully eschewed strict sufficiency standards. ( See Proceedings of the Institute on Federal Rules (1938) (statement of Edgar Tolman), reprinted in RULES OF CIVIL PROCEDURE FOR THE DISTRICT COURTS OF THE UNITED STATES 301-13 (William W. Dawson ed., 1938).

In their place, the drafters instituted a regime in which a complaint quite easily entitled its author to discovery in order to prevent dismissal of cases before litigants have had an adequate opportunity to demonstrate their merit. ( See Mark Herrmann, James M. Beck & Stephen B. Burbank, Debate, Plausible Denial: Should Congress Overrule Twombly and Iqbal? 158 U. PA. L. REV. PENNUMBRA 141, 148 (2009), (Burbank, Rebuttal) (asserting that the drafters of the Federal Rules objected to a technical pleading regime because it would "too often cut[] off adjudication on the merits").

Recognizing that transsubstantive pleading standards do not sufficiently account for the capability differential between represented and unrepresented litigants, the Supreme Court fashioned a rule of special solicitude for pro se pleadings. ( See Robert Bacharach & Lyn

Entzeroth, Judicial Advocacy in Pro Se Litigation: A Return to Neutrality, 42 IND. L.REV. 19, 22-26 (2009) (noting that courts created ways to ensure that meritorious pro se suits would not be dismissed simply because the litigants lacked legal knowledge and experience, one of which was liberal construction).

Far from just articulating a common systemic value, though, the right to prosecute one's own case without assistance of counsel in fact depends significantly upon liberal pleading standards. ( Cf. Charles E. Clark, The New Federal Rules of Civil Procedure: The Last Phase— Underlying Philosophy Embodied in Some of the Basic Provisions of the New Procedure, 23 A.B.A. J. 976, 976-77 (1937) (commenting that liberal pleading rules were necessary to mitigate information asymmetries between plaintiffs and defendants that often led to premature dismissal of suits).

Notably, in no suits are such information asymmetries more apparent than those in which pro se litigants sue represented adversaries. These types of suits comprise the vast majority in which pro se litigants appear. Cf. Jonathan D. Rosenbloom, Exploring Methods to Improve Management and Fairness in Pro Se Cases: A Study of the Pro Se Docket in the Southern District of New York, 30 FORDHAM URB. L.J. 305, 323 (showing that the majority of pro se cases involve unrepresented plaintiffs who sue governmental defendants).

Plaintiff appears in this action **"In Propria Persona"** and asks that her points and authorities relied upon herein, and issues raised herein, must be addressed **"on the merits"**, Sanders v United States, 373 US 1, at 16, 17 (1963); and addressed with "clarity and particularity", McCleskey v Zant, 111 S. Ct. 1454, at 1470-71 (1991); and afforded " a full and fair" evidentiary hearing, Townsend v Sain, 372 U.S.293, at p.1 (1962). See also Pickering v Pennsylvania Railroad Co., 151 F.2d 240 (3d Cir. 1945).

Pleadings of the Plaintiff SHALL NOT BE dismissed for lack of form or failure of process.

All the pleadings are as any reasonable man/woman would understand, and: "And be it further enacted. That no summons, writ, declaration, return, process, judgment, or other proceedings in civil cases in any of the courts or the United States, shall be abated, arrested, quashed or reversed, for any defect or want of form, but the said courts respectively shall proceed and give judgment according as the right of the cause and matter in law shall appear unto them, without regarding any imperfections, defects or want of form in such writ, declaration, or other pleading, returns process, judgment, or course of proceeding whatsoever, except those only in cases of demurrer, which the party demurring shall specially sit down and express together with his demurrer as the cause thereof.

And the said courts respectively shall and may, by virtue of this act, from time to time, amend all and every such imperfections, defects and wants of form, other than those only which the party demurring shall express as aforesaid, and **may at any, time, permit either of the parties to amend any defect in the process of pleadings upon such conditions as the said courts respectively shall in their discretion, and by their rules prescribe** (a)" *Judiciary Act of September 24, 1789*, Section 342, FIRST CONGRESS, Sess. 1, ch. 20, 1789.

Plaintiff appears in this action "In Propria Persona" and wishes that her points and authorities relied upon herein, and issues raised herein, be addressed "on the merits" and not simply on her Pro Se Status.

## Factual Allegations

Plaintiff Crystal L. Cox re-alleges, and fully incorporate all previous paragraphs.

The Following is stated Upon the knowledge and belief of Plaintiff Crystal Cox:

Plaintiff Crystal Cox is a resident of Washington State.

Upon information and belief, Defendants are all residents of the State of Montana.

In 2004, after selling a Ranch in Montana, Plaintiff opened a real estate company in Oregon, and moved to Oregon at that time. In January 2006 Plaintiff made the decision to move back to Montana. This decision to go through the expense to move a thousand miles back to Montana was based solely on the Opportunity that the "Terry Property" "1 Drumlin" Lane represented to us and to our business, which at that point was multiple real estate agents, and a large Internet Marketing Company. A home / and business space of this size was needed to maintain and grow our business, and to hire on more help, and contract with more agents as well as to maintain our existing business.

January of 2006, Plaintiff Crystal L. Cox contacted Ray Fauth, Whitefish Credit Union Loan Officer, regarding securing a loan for 1 Drumlin lane through the Whitefish Credit Union. I, Plaintiff Crystal L. Cox, explained to Defendant Ray Fauth that we had a ranch property in Oregon we were selling and had a small amount to put down on the Terry Property ( 1 Drumlin Lane ). Defendant Ray Fauth worked a deal with me whereby we would put down

25

a certain amount, call it a construction loan, pay interest only and then pay off the home when and if the Oregon property Sold. These initial conversations were just between Defendant Ray Fauth and Plaintiff Crystal Cox. Once the deal was worked out, Leslie Turner reviewed and signed the documents. As the record shows.

On January 25th 2006 Defendant Scott Rumble of Defendant Noel and Associates Limited, appraised the 1 Drumlin Property for client: Defendant Whitefish Credit Union.

Plaintiff Crystal L. Cox alleges that Defendant Scott Rumble should have had a greater duty of care and that Defendant Scott Rumble is in breach of contract and has violated intentional misrepresentation in not discovering massive mold issues in the home per his appraisal contract in which on page 4 of 5 number 5 and 6 which discuss the appraiser's duty to note adverse conditions, deterioration, and other adverse conditions. This appraisal was RELIED upon by Plaintiff in by this home, and relied upon in securing a loan through Defendant Ray Fauth, Defendant Whitefish Credit Union.

Plaintiff Crystal L. Cox alleges that Defendant Scott Rumble acted in conspiracy with Defendant Ray Fauth and Defendant Whitefish Credit Union to commit fraud, intentionally misrepresent the property, and all are in breach of contract, in violation of Predatory Lending Laws, Fair Debt Collection Practices Act (FDCPA), Consumer Protection Act, Truth in Lending Act (TILA), Conspiracy Against Citizen Rights, Implied Covenant of Good Faith and Fair Dealing, Negligence Laws, violations of Civil Rights and violations of civil conspiracy and the RICO Act.

Plaintiff Crystal L. Cox alleges that Defendant Scott Rumble, Defendant Ray Fauth and Defendant Whitefish Credit Union's actions caused Plaintiff damage and that they are liable for punitive damages, and all relief and remedies allowed by law. And Plaintiff Crystal L. Cox alleges that at this time Defendant Scott Rumble was a "trainee" and that his supervisor Defendant Noel and Associates Limited, Defendant Martha Noel are liable to damage caused to Plaintiff.

### Page 5 of 5 of the Uniform Residential Appraisal Report States:

"I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability , soundness, or structural integrity of the property."

Upon knowledge and belief, Plaintiff Crystal L. Cox alleges that Defendant Scott Rumble made this statement fraudulently and in civil conspiracy, as the home was deemed not livable quickly thereafter, and legal action ensued, which took years to reach a settlement agreement in which Plaintiff signed.

And after this it was found by Defendant Ron Nelson that the chimney had a massive toxic mold infestation, of which it was the duty of care, and lawful duty of Defendant Scott Rumble "trainee" and his supervisor Defendant Noel and Associates Limited, Defendant Martha Noel to discover this issue. That on top of the massive structural issues

An appraiser has a greater duty of care then a real estate broker or a home inspector as they are working in the banking and financial industry and the laws of which govern this. Such as HUD, Lending Laws, Predatory Lending Laws, Truth in lending. Upon knowledge and belief, Plaintiff Crystal L. Cox alleges that Defendant Scott Rumble "trainee" and his supervisor Defendant Nowel and Associates Limited, Defendant Martha Noel had a GREATER duty of care and duty to act in good faith and fair dealings, as this was a loan that was subject to HUD standards and lending laws of the United States and Montana Banking and Mortgage Laws, than that of simply a real estate broker or even a home inspector.

Perhaps this duty of care would be trumped by a forensics engineer, however Plaintiff RELIED on this home appraisal to make life decisions, business decisions, financial decisions and there was a serious breach of contract, breach of duty of care, negligent actions and in such a manner that caused Plaintiff Harm.

## Number 14 of this same Page 5 of 5 of the Uniform Residential Appraisal Report States:

"I have taken into consideration the factors that have an impact on value with respect to the subject property,.. , to adverse influences and .. market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property."

27

Upon knowledge and belief, Plaintiff Crystal L. Cox alleges that Defendant Scott Rumble did not take notice of adverse influences, did not report on deterioration, the presence of hazardous wastes, toxic substances, and adverse environmental conditions. And did not consider these adverse conditions but instead simply pushed the appraisal through to get the loan through, in conspiracy with other Defendants in this complaint.

**Number 15 says, "I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statement and information in this appraisal report are true and correct."**

Upon knowledge and belief, Plaintiff Crystal L. Cox alleges that Defendant Scott Rumble did knowingly withhold information from this report and did not report to the best of his knowledge.

**Number 18 says, "My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).**

Upon knowledge and belief, Plaintiff Crystal L. Cox alleges that Defendant Scott Rumble did favor Defendant Century 21 Land Office, Defendant Mike Workman and Defendant Whitefish Credit Union in promises of future appraisals and work. Upon knowledge and belief, Plaintiff Crystal L. Cox alleges that Defendant Scott Rumble did have a predetermined value, as Defendant Scott Rumble asked Plaintiff Cox what the value needed to be in order for the loan to approve. Plaintiff Cox told Defendant Scott Rumble to ask the Seller's agent that information if he needed it to close the loan. Or to ask the client Defendant Whitefish Credit Union. And that she simply wanted an honest, impartial appraisal.

Defendant Scott Rumble essentially hired by Plaintiff Cox, as Cox contacted Defendant Scott Rumble and then Plaintiff Cox contacted Defendant Whitefish Credit Union Loan Officer Defendant Ray Fauth. Defendant Ray Fauth then contacted Defendant Scott Rumble and Defendant Century 21 Land Office, Defendant Mike Workman was contacted by Defendant Scott Rumble and an appraisal for the property was set up and executed. Defendant Scott Rumble essentially had a fiduciary duty, and duty of care to Plaintiff Cox

28

who was the one that contacted Defendant Scott Rumble to perform the appraisal at 1 Drumlin.

Upon knowledge and belief, Plaintiff Crystal L. Cox alleges that Defendant Noel and Associates Limited, Defendant Martha Noel did not supervise appraiser Defendant Scott Rumble in this matter, and that Defendant Noel and Associates Limited, Defendant Martha Noel is liable for what ended up being a financial disaster for Plaintiff, and causing massive irreparable harm to Plaintiff.

Upon knowledge and belief, Plaintiff Crystal L. Cox alleges that Defendant Noel and Associates Limited, Defendant Martha Noel signed the Supervisory Appraiser's Certification on the final page of the subject appraisal and that in doing so committed fraud against the client, the Plaintiff and related parties.

Defendant Noel and Associates Limited, Defendant Martha Noel certified that she directly supervised the appraiser for this appraisal assignment and that she agrees with the statements, opinions, conclusions in the the appraisal, yet Defendant Noel and Associates Limited, Defendant Martha Noel DID not go to this property, nor attend this on site inspection or appraisal of this property.

This is even more negligent and fraudulent and alleged to be fraud in favor of the lender, as Defendant Scott Rumble appraised a second home that same day in which the outcome of the appraisal directly affected the sale of 1 Drumlin Lane, this was another property owned by Plaintiff and used as collateral. Defendant Noel and Associates Limited, Defendant Martha Noel did not view this property either, nor supervise her trainee in this appraisal.

Upon knowledge and belief, Defendant Noel and Associates Limited, Defendant Martha Noel signs that she fully accepts responsibility for the contents of the appraisal report even though she had not seen the property nor been a party to the actual appraisal events.

Upon knowledge and belief, The Supervisory Appraiser's Certification is signed by Defendant Martha Noel and dated 1/25/2006, this is the same day that Defendant Scott Rumble appraised the home, yet Defendant Scott Rumble did not turn in appraisal to lender until **February 02, 2006.**

Upon knowledge and belief, Defendant Martha Noel does not live in the area of the subject property, did not come to the property, and had not reviewed the Appraisal before it was turned in to client: Defendant Ray Fauth, Defendant Whitefish Credit Union.

As the records show, Defendant Scott Rumble gave the report to Defendant Ray Fauth, Defendant Whitefish Credit Union via email on February 2nd 2006. Defendant Ray Fauth, Defendant Whitefish Credit Union emailed Plaintiff Cox on
Friday, January 27, 2006 5:28 PM, Defendant Ray Fauth, Defendant Whitefish Credit Union emailed Plaintiff Cox the following:

"HI Crystal! Thank you for the e-mail. I didn't get it before I left on Friday. Scott Rumble called me today and said that it would be a few more days to get me the appraisal, due to difficulty finding comps. You guys have a great week!!! Ray"

On February 2nd, 2006 Defendant Ray Fauth, Defendant Whitefish Credit Union emailed Plaintiff Crystal Cox via forwarding, this email with the appraisal attached

"
—— Original Message ——
**From:** Scott Rumble
**To:** rfauth@whitefishcreditunion.com
**Sent:** Thursday, February 02, 2006 4:48 PM
**Subject:** Drumlin-Turner App. Report

Hi Ray
Here is the first report, I am still working on the other.
Thank You
Scott Rumble"

Therefore, Defendant Noel and Associates Limited, Defendant Martha Noel could not have actually reviewed, agreed with, been involved with or even reviewed this appraisal report, **BEFORE** she signed off her acceptance, certification and liability of this report.

On Jan. 25th, 2006 Defendant Scott Rumble appraised subject property, On Jan. 27th Defendant Ray Fauth contacts Plaintiff Cox in regard to contact from Defendant Scott Rumble and that the appraisal would be a few more days.

Then days later on February 2nd 2006, Defendant Scott Rumble delivers the appraisal report to Defendant Ray Fauth, Defendant Whitefish Credit Union via email, who then forwards the appraisal report to Plaintiff Crystal Cox. Yet Defendant Noel and Associates Limited, Defendant Martha Noel signed off on the report of this "Trainee" on January 25th, 2006. Plaintiff Cox alleges this to be fraud, neglect and in violation of Montana Law, and the lending rights, constitutional rights of Plaintiff.

Plaintiff Crystal L. Cox alleges that Defendant Noel and Associates Limited, Defendant Martha Noel did not supervise appraiser Defendant Scott Rumble in this matter, and did not review the appraisal and sign off, AFTER the appraisal was completed, but instead signed a blank form simply for her own ease and at the great personal expense, life and irreparable damage to Plaintiff.

Plaintiff Crystal L. Cox alleges that Defendant Noel and Associates Limited, Defendant Martha Noel committed fraud, was negligent and is guilty as directly connected to or in violation of all causes of action of this lawsuit.

Defendant Noel and Associates Limited, Defendant Martha Noel CERTIFIED that she had herself had inspected the interior and exterior of the subject property. Plaintiff Cox alleges this to be false and fraudulent certification.

This certified information was used for a HUD Loan, was used in matters that affect RESPA Laws, Montana Credit Union Laws, Banking and Finance Laws, Fannie Mae, Freddie Mac and the damage resulting from this fraudulent appraisal has caused irreparable harm to plaintiff, in which Defendant Noel and Associates Limited, Defendant Martha Noel are both liable for to the relief allowed by law.

## Appraisal Terms state;

"Scott Rumble is a licensed appraiser trainee and is a licensed Realtor in the state of Montana. Training includes supervisory interior/exterior inspection of all appraised properties within the past year, which meets Montana Trainee requirements.

Martha Noel MT CR #625 is co-signer of report and has viewed the interior/exterior of the subject property in June of 2004.

There have been no significant changes to the property since that time. "

According to forensics engineered reports, there had been massive changes since that time in the quality of the home and the condition of the home, as well as environmental safety. Also note that the appraisal was January 25th 2006, and Defendant Noel and Associates Limited, Defendant Martha Noel signed off on the appraisal that she had visited the interior / exterior of the home in June 2004, which is is nearly two years prior, therefore the report itself admits fraud, not only that Defendant Noel and Associates Limited, Defendant Martha Noel lied about reviewing the appraisal but also in the fact that

there was well over a year as stated on the appraisal, " Training includes supervisory interior/exterior inspection of all appraised properties within the past year, which meets Montana Trainee requirements." And therefore Plaintiff Crystal L. Cox alleges that Defendant Noel and Associates Limited, Defendant Martha Noel has committed fraud and violations of law in which have caused Plaintiff irreparable harm and damage to Plaintiff's life, in not performing an interior/exterior inspection of the property within the limits of the law regarding her trainee Defendant Scott Rumble.

Also it is important to note here that there is undisclosed sale fails on the subject property in which Plaintiff Crystal L. Cox alleges that Defendant alleges that Defendant Century 21 Land Office Eureka Montana, Defendant Century 21 Real Estate LLC, Defendant Mike Workman, Defendant Shannon Wolleat, Defendant First American Title, Defendant Kathy Schulte, Defendant Northwest Montana Association of Realtors (NMAR), acted in conspiracy to cover up. One such sale fail was in 2004, therefore Defendant Martha Noel may have, even more liability in this legal action in that regard as well.

Upon Knowledge and Belief, On March 3, 2006 Defendant Ray Fauth, Defendant Credit Union, Defendant First American Title, and Plaintiff closed on subject property. Plaintiff took possession of property on March 18th 2006.

On May 21st 2006, roof leaked massively. Plaintiff called Roofers in the area, Plaintiff also contacted Defendant Ron Nelson as he was a friend of her family, and she thought he may have time to come and take a look at the issue. Defendant Ron Nelson stated he was too busy, and we should call someone else.

Plaintiff could not get a roofer to the property, Roof continued to leak so in June of 2006 Plaintiff connected Douglas Law Firm in Libby to get legal advice on the situation. Plaintiff Crystal Cox had known of Douglas Firm for decades and thought they would be the best place to call in this situation.

Upon Knowledge and Belief, Douglas was very busy that spring, and could not get to Plaintiff yet. So Plaintiff continued to look for a roofer and help with the situation. Finally in September Plaintiff contacted Douglas Law Firm again and at this time Douglas Law Firm's secretary was Defendant Cynthia B. Miller who also worked with Defendant Scott Curry at Defendant TLC Engineering and Defendant Cynthia B. Miller told Douglas that Defendant Scott Curry could do a forensics inspection on the property and assist with litigation as an expert witness.

Original Contract Signed with Defendant Scott Curry State of Montana Board of Professional Engineer and Land Surveyor, License # 12410 was on 9/15/2006

Upon Knowledge and Belief, On September 19th 2006 Defendant Scott Curry, Montana Engineer, of Defendant TLC Engineering came to Plaintiff's home for a meeting and then was to continue on with his forensics engineer inspections and reports. On this first day Defendant Scott Curry told Plaintiff that she was in danger of the structure collapsing at any moment, and in danger of possible health risks due to mold, as the records show of Defendant Scott Curry's recommendation to immediately vacate the home and the reasons why. (TLC Letter Dated December 2, 2006 regarding moving from home and reasons why he told Plaintiff to move.

On October 1st 2006, Plaintiff moved out of the home at great expense, loss of use, loss of business, and rented a home 2 hours from subject property.

Once Plaintiff moved out of home and secured a rental, Scott A. Curry P.E, TLC Engineering, performed further testing, of which included massive, detailed structural analysis and thorough Mold Testing.

In the Late Fall, Early winter of 2006, I, Crystal Cox, called Judy Kirby of BJCC Home Inspections, as I was gathering more information on the home for our legal case. By then, I was well aware of massive structural defects of the home, and aware of a home inspection of some kind that took place before we bought the home. I had noticed 2 sale fails in the NMAR, MLS data records and could only account for one in my interviews. There was another sale fail that has yet to be determined who it was or why the sale failed. There were records in the files of Mike Workman of Century 21 Eureka Land Office, in which turned up in our legal Discovery of the matter, that had a memo written by Shannon Wolleat of First American Title in Eureka Montana. The memo was a scheduling of an inspection, of which Shannon Wolleat of First American Title nor Mike Workman of Century 21 Eureka Land Office seemed to have any recollection of.

Judy Kirby of BJCC Inspection told me that she had heard of Stachybotrys in the home from a prior inspection. When I questioned her more on this issue, she simply stopped the conversation. Upon hearing this information, I assumed that there was a prior home inspection on the home that was undisclosed to us, when we purchased the home. I had inquired previously with First American Title in Eureka Montana, and with Mike Workman the Listing agent, regarding a prior home inspection and was told that there was none. However the MLS data showed a sale fail that was unaccounted for, and there was a memo on one of the files by Shannon Wolleat of First American Title regarding scheduling a home inspection. It is my belief that that 1 Drumlin Lane had a home inspection and a sale fail due to that inspection in which was not disclosed to Plaintiff Crystal Cox nor to Leslie Turner.

Plaintiff Crystal Cox, had interviewed local Brokers on the matter and had found detailed information regarding one of the sale fails. However the other sale fail, still had not been found, nor had any details as to why the sale failed, turned up.

So in part of these discovery investigations, Plaintiff Cox called Judy Kirby of BJCC Home Inspections to see if she had done an inspection on the home, or knew anyone who had. As our company, Ten Lakes Realty, had come to know Judy and Bruce Kirby of BJCC Home Inspections, to be honest, thorough and we had good business dealings with them.

Plaintiff Cox started off the phone call asking Judy if she knew the house, she said yes of course, it's the biggest house in town, of course I know it. I said have you ever inspected it, she said no, why? I said, well my partner and I bought the home, and there are issues, so I was just wondering if you had done an inspection? She said issues, questioningly, you mean the Stachybotrys mold issue ? I said, no, actually it's a structural issue, the whole house seems to be at risk of coming down any day. Then, it obviously clicked in my mind, and I said, what about Stachybotrys? She said, oh nevermind? I Said Judy, this is important, this is our life, our life's work and investment. Please tell me what you meant. She said, nevermind, I probably heard you wrong. I said Judy, you just said Stachybotrys, do you know of any in the home? Do you know of a Mold Inspection done that turned up Stachybotrys? And she forced her way off the phone. I emailed her after that and no word from here until months later when she did an inspection for Opposing Counsel in our lawsuit, knowing full well that there was mold, and that BJCC was fraudulent inspecting a home after the forensics facts were already laid out.

This extremely alarming conversation with Judy Kirby of BJCC Home Inspections led to, without a doubt belief that there, indeed was an inspection that she knew of and that had not been disclosed to us, the buyers. And that there was, indeed, Stachybotrys, Black Toxic Mold in the Home, and someone knew it existed.

Plaintiff immediately contacted Defendant Scott A. Curry P.E, Defendant TLC Engineering, and told him, in detail about the phone conversation with Judy Kirby of BJCC Home Inspections and that there was a high probability that the home has Black Mold, Stachybotrys, Toxic Mold. Plaintiff wanted to insure that Defendant Curry was doing a Mold Inspection and that he was qualified to do a Mold Inspection of an issue of this magnitude, where by a chimney that was 10 Foot Square and 30 Foot Tall was possible full of Mold, as well as the Gable End Walls and roofing material, as according to interviews, the water has been an issue for years. Defendant Scott A. Curry P.E, TLC Engineering assured Plaintiff that he was qualified and even sent further eMail recommendations of his Mold Surfaces from other Mold Experts in the Montana Industry and Montana Attorneys.

Upon Knowledge and Belief, Defendant Scott A. Curry P.E, TLC Engineering, was paid approx. $50,000 in Total for Forensics Engineering inspections. Of the Billing Document #39, Approximately $7000 was for Mold Testing, Mold Technician Hours, and Mold Lab Tests Regarding Tests for Mold in Our Home by Scott A. Curry P.E, TLC Engineering. (As Exhibits Show )

34

On April 17th 2007, Defendant Scott Curry, Defendant TLC, Defendant Kimberley A. Remick, Defendant Remick LLC, performed mold tests, infrared heat testing for mold, took mold samples and performed a mold test that cost Plaintiff approx. $7000.

On April 17th 2007, Defendant Josh Tallmadge, Defendant Tallmadge GIS and Drafting LLC performed detailed measurements for engineered drawings of the home, chimney, structure, and the services performed on this day were approx. $30,000 Paid by Plaintiff to TLC Engineering, billing by Defendant Cynthia B. Miller.

On August 11th 2008 Plaintiff signed settlement agreement on property, based on the Mold testing and engineered reports of Defendant Scott Curry, Defendant TLC, Defendant Kimberley A. Remick, Defendant Remick LLC, Defendant Josh Tallmadge, Defendant Tallmadge GIS and Drafting LLC.

On approx. August 15th, 2008 Plaintiff Crystal Cox contacted Defendant Ron Nelson, Defendant Nelson Construction regarding a bid on the project, as Plaintiff's mom was a long time friend, a religious associate of Defendant Ron Nelson, he was a Jehovah's Witness Elder, of whom Plaintiff's mom held in high regard.

Plaintiff Crystal Cox's mother had spoken prior to Defendant Ron Nelson regarding the lawsuit settling and the possibility of a job with Plaintiff Crystal Cox.

On approx. August 20th 2008, after the settlement agreement money was paid, and Before there were in bids to fix the structural issues, Plaintiff Crystal Cox made an in person visit to Defendant Ray Fauth, Defendant Whitefish Credit Union and told him that there was a settlement and asked how he wanted to proceed with the loan. Defendant Ray Fauth advised Plaintiff Crystal Cox that he was in favor of the settlement money being used to fix the structure vs. pay down the loan.

Therefore, Plaintiff Crystal Cox scheduled a bid on site with Defendant Ron Nelson, Defendant Nelson Construction.

On August 26th 2008 Defendant Ron Nelson, Defendant Nelson Construction made bid for Plaintiff Crystal Cox, as the record shows, in regard to the 1 Drumlin Lane Project.

Defendant Ron Nelson, Defendant Nelson Construction made this bid regarding issues from the legal case upon which made the money for the job possible, and upon review of all engineered reports.

Plaintiff trusted Defendant Ron Nelson, Defendant Nelson Construction and as a family friend, Jehovah's Witness Elder and associate of Plaintiff's mother, Plaintiff agreed to hire Defendant Ron Nelson, Defendant Nelson Construction for the job to fix the structural and environmental issues regarding Plaintiff's home.

Upon Knowledge and Belief, Plaintiff truly believed that Defendant Ron Nelson, Defendant Nelson Construction would do right by the project, would act with integrity, would not lie to Plaintiff and would be able to fix the issues as he stated he could. Plaintiff believed Defendant Ron Nelson, Defendant Nelson Construction had went into the chimney in the beginning as he stated he had and that Defendant Ron Nelson, Defendant Nelson Construction had truly assessed the issues causing the roof leak, of which stemmed from inside of the massive 10x10, 30 foot tall chimney.

Upon Knowledge and Belief, Defendant Ron Nelson, Defendant Nelson Construction was to provide structural remodel per the forensics engineered report, and to make the home a safe, non-toxic environment. The Chimney was the main issue of all the reports, and it was claimed as to have massive structural issues. ON this first visit Defendant Ron Nelson, Defendant Nelson Construction told Plaintiff that he would go into the chimney, in order to make his bid, as this was the epicenter of the issues of the legal action, the leaky roof, the toxic mold possibility and other issues addressed in the engineered reports he had read, given to him by Plaintiff.

Upon Knowledge and Belief, Defendant Ron Nelson, Defendant Nelson Construction began construction on Plaintiff's home per his bid to Plaintiff in the name "Crystal Cox", on or around mid September of 2008. The original bid was for $39,835 to fix the issues stemming from the litigation of which the money to pay him came from. Defendant Ron Nelson, Defendant Nelson Construction had read the engineered reports, allegedly went into the chimney and gave Crystal Cox his bid on August 26, 2008.

Upon Knowledge and Belief, On August 28th, 2008 Defendant Ron Nelson, Defendant Nelson Construction was paid $20,000 of the $39,835 to get supplies, beams and get started on the project. By 9/25/2008, Defendant Ron Nelson, Defendant Nelson Construction CLAIMED he had fixed the leak stemming from the chimney and had fixed the structural problems with the home.

Yet the roof was still leaking around all 4 corners of a massive chimney, the problem had not been fixed.

Upon Knowledge and Belief, On 9/25/2008, Defendant Ron Nelson, Defendant Nelson Construction received another payment of $30,000 to fix the issues stemming from the lawsuit, of which was the whole point of hiring Defendant Ron Nelson, Defendant Nelson Construction and where the money came from to pay Defendant Ron Nelson, Defendant Nelson Construction.

By mid October 2008, the Defendant Ron Nelson, Defendant Nelson Construction AGAIN claimed he had fixed the leak and the issues causing the leak. However, the roof still leaked, the massive beams had water running down them, water was running on to new construction, and the problem had NOT been fixed. On October 16th 2008 Ron Nelson was paid an additional $35,000, as records show, to fix the issues with the structure that he claimed needed to happen to stabilize the home and STOP the leak.

By mid November 2008, the roof still leaked, Defendant Ron Nelson, Defendant Nelson Construction had Plaintiff over a barrel and with no way to stop construction, as the home could not sell with the roof still leaking. On November 19th, 2008 Defendant Ron Nelson, Defendant Nelson Construction was paid an additional $15,000.

By mid December 2008, the roof STILL leaked. Each time Defendant Ron Nelson, Defendant Nelson Construction assured Plaintiff that he had fixed the problem. Plaintiff trusted Defendant Ron Nelson, Defendant Nelson Construction and therefore continued on with the project, desperate to STOP the leak in order to sell the home. On December 12th 2008 Defendant Ron Nelson, Defendant Nelson Construction was paid an additional $13,962.

In January 2009 there was a deep freeze, and the roof leak seemed to stop. By March 2009 it was obvious that the leak was not yet fixed. Defendant Ron Nelson, Defendant Nelson Construction was paid additional money, upon his word that the structural integrity needed the work he was doing in order to fix the leak and to cure the structural defects at issue in the engineered reports. The settlement money ran out by late May of 2009.

By the second week in June of 2009 the roof was leaking badly again, the money was all gone. Plaintiff called Defendant Ron Nelson, Defendant Nelson Construction crying, desperate for help to STOP the LEAK.

Upon Knowledge and Belief, On or around June 18th 2009, Defendant Ron Nelson Contacted Defendant Randy Brosten of Antonich Adjusters Inc. in regard to opening an insurance claim, through Flathead Valley Insurance in order to get money to fix the leaking chimney.

Upon Knowledge and Belief, Defendant Ron Nelson, Defendant Nelson Construction convinced Plaintiff that it was a new leak from recent storms and not related to the previous issue. Defendant Ron Nelson assured Plaintiff Crystal Cox that he could fix the new issue, and that an insurance claim was the best way to get the funds for the fix, the job.

As email records show, Defendant Ron Nelson Contacted Defendant Randy Brosten and Flathead Farmers insurance directly, Defendant Ron Nelson Contacted Defendant Randy Brosten coordinated insurance checks, on site adjuster visits, and the project with Plaintiff Crystal Cox, as email records show.

On or around July 8th 2009 Defendant Ron Nelson emailed Plaintiff Cox and asked her if she had the insurance check yet so he could schedule her job in to his summer projects, as email records show.

By the end of July Defendant Ron Nelson, Defendant Nelson Construction had begun to tear apart the kitchen, remove cabinets and begin to mitigate the water damage from what he said was a new problem, and not only did Defendant Ron Nelson, Defendant Nelson Construction tell Plaintiff this, but also Defendant Ron Nelson told farmers insurance and the insurance adjuster this same information, via his expertise and experience in construction.

On or around the first week in August of 2009, Defendant Ron Nelson came up to Plaintiff Crystal Cox in the home and said he needed to talk to her. Defendant Ron Nelson then led Plaintiff up to the Chimney entrance he had created, and ladders inside of the chimney. Leslie Turner had made a trip to Kalispell on this day for supplies and was not on the property.

Plaintiff Cox asked Defendant Ron Nelson jokingly, why he was so serious. Plaintiff Cox asked Defendant Ron Nelson if this was his first time he had went in to the chimney, he looked to the ground and shook his head yes. Plaintiff's heart sank, as that meant that the hundreds of thousands of dollars prior had been in vain, had been fraud and the chimney, which was the MAIN issue of the entire legal action and the reason the legal action began, and the chimney was what Defendant Ron Nelson was paid to fix the structural integrity of, and here it was this much money in, Plaintiff out of money and now the chimney was actually entered.

.

38

Plaintiff Cox entered the chimney at the request of Defendant Ron Nelson and with Defendant Ron Nelson, upon entering the chimney Defendant Ron Nelson showed Plaintiff Cox a massive infestation of black mold, coating the walls of the inside of this massive chimney.

Not only had the structure never been actually entered by Defendant Ron Nelson, but it seemed that Defendant Scott Curry had also lied about entering the chimney, had falsified photos, and had falsified mold testing. And that Defendant TLC Engineering, Tallmadge GIS and Drafting LLC had falsified engineered drawings of the structure, as without entering the chimney it would be impossible to assess how the structure was or was not holding up one end of a 7000 square foot home.

Plaintiff Cox asked Defendant Ron Nelson what "we" should do about this situation, as there was no more money. Defendant Ron Nelson said he was certified in Mold Mitigation, had huge dryers, could paint on kilz and he would use insurance money to mitigate the Mold. Both Plaintiff Crystal Cox and Defendant Ron Nelson, made the decision not to tell Leslie Turner of the matter and to simply mitigate the issue. Defendant Ron Nelson ASSURED Plaintiff Crystal Cox that he was certified and could mitigate the Mold. Plaintiff Cox had no choice but to take care of the situation as professionally as possible.

By this time there was no settlement money left, Defendant Ron Nelson had exhausted the home insurance, and Plaintiff had no money and no options.

In the beginning of August 2009, Plaintiff Crystal Cox AGAIN emailed Defendant Ron Nelson, as the ROOF still leaked badly around the chimney and now seemingly worse, raining down as if a shower, off of all 4 corners of beams coming out of the chimney.

Defendant Ron Nelson came to the home and tried to put caulking and other fix on the situation. On August 12th 2009 Defendant Ron Nelson emailed Plaintiff Crystal Cox, and asked if the roof was still leaking, it was.

**In June 2010 Plaintiff Cox had a buyer for the home, however, the roof still leaked BADLY and therefore the home was unable to be SOLD**

At the End of March 2011, Cox was able to get the buyer interested again, however the roof was still leaking so the home was unable to be SOLD.

39

### Cause of Action 1.) Section 28:1332bc Diversity - Breach of Contract

Plaintiff Crystal L. Cox re-alleges, and fully incorporates all previous paragraphs in their entirety.

Plaintiff Crystal L. Cox alleges that defendants violated Section 28:1332bc Diversity - Breach of Contract and caused Plaintiff harm, thereby Plaintiff is allowed all available relief by law.

Plaintiff Crystal L. Cox alleges that defendants are in breach of contract and this has caused Plaintiff Harm.

Plaintiff Crystal L. Cox alleges that defendants are in breach of fiduciary duty.

### Cause of Action 2.) 28:1332RI Diversity-Racketeering (RICO) Act.

Plaintiff Crystal L. Cox re-alleges, and fully incorporates all previous paragraphs in their entirety.

Upon knowledge and belief Plaintiff Crystal L. Cox alleges that defendants violated **28:1332RI Diversity-Racketeering (RICO) Act** and caused Plaintiff harm, thereby Plaintiff is allowed all available relief by law.

Upon knowledge and belief Plaintiff Crystal L. Cox alleges that defendants Conspired in a pattern and history that caused Plaintiff permanent damage, thereby Plaintiff is allowed all available relief by law.

### Cause of Action 3.) Intentional Misrepresentation

Plaintiff Crystal L. Cox re-alleges, and fully incorporates all previous paragraphs in their entirety.

Upon knowledge and belief Plaintiff Crystal L. Cox alleges that defendants violated **Intentional Misrepresentation laws** and caused Plaintiff harm, thereby Plaintiff is allowed all available relief by law.

Plaintiff Crystal L. Cox alleges that defendants intentionally misrepresented lab results, engineered drawings, insurance claims, structural construction, mold testing, loans, appraisals, sales data, prior home inspections, and more, in which cause Plaintiff irreparable harm.

## Cause of Action 4.) Civil Conspiracy

Plaintiff Crystal L. Cox re-alleges, and fully incorporates all previous paragraphs in their entirety.

Upon knowledge and belief Plaintiff Crystal L. Cox alleges that defendants violated **Civil Conspiracy laws** and caused Plaintiff harm, thereby Plaintiff is allowed all available relief by law.

Plaintiff Crystal L. Cox alleges that defendants acted in a civil conspiracy that affected lending laws, the health and well being of Plaintiff, the property and business of Plaintiff, the quality of life of Plaintiff, and endangered the life of Plaintiff, harmed her health, reputation, business and caused Plaintiff irreparable, immeasurable harm.

## Cause of Action 5.) Fair Debt Collection Practices Act (FDCPA) establishing legal protection from abusive debt collection practices, Fair Debt Collection Act,

Plaintiff Crystal L. Cox re-alleges, and fully incorporates all previous paragraphs in their entirety.

Upon knowledge and belief Plaintiff Crystal L. Cox alleges that defendants violated the Fair Debt Collection Practices Act (FDCPA) and caused Plaintiff harm, thereby Plaintiff is allowed all available relief by law.

## Cause of Action 6.) Consumer Protection Act

Plaintiff Crystal L. Cox re-alleges, and fully incorporates all previous paragraphs in their entirety.

Plaintiff Crystal L. Cox alleges that defendants violated the Consumer Protection Act and caused Plaintiff harm, thereby Plaintiff is allowed all available relief by law.

Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful pursuant to the laws of the State of Montana and the Consumer Protection Act, Mont. Code Ann. 30-14-101, et seq.

Upon knowledge and belief Defendants used unfair methods and deceptive acts in connection with the mold inspection, engineered reports, engineered drawings, appraisals, loans, construction, insurance, and thereby caused Plaintiff irreparable harm.

Upon knowledge and belief Defendants failed to perform mold testing that Plaintiff paid for. Defendants failed to enter the massive chimney on the property that the legal action was about, and yet spent massive amounts of Plaintiff's money on this "fix".

Upon knowledge and belief, Defendants failed to report structural damage appropriately to Plaintiff's insurance company. Defendants failed to disclose previous inspections in which turned up mold.

Upon knowledge and belief Defendants failed to perform fiduciary and contractual duties.

Upon knowledge and belief Defendants failed to provide accurate measurements and inspections regarding detailed, engineered drawings and reports.

These actions by defendants, in violation of the consumer protection act, caused Plaintiff to sign a settlement agreement that she would not have signed, had defendants performed their contractual duties obligated to Plaintiff.

42

## Cause of Action 7.) 28:1332ds Diversity - Contract Dispute

Plaintiff Crystal L. Cox re-alleges, and fully incorporates all previous paragraphs in their entirety.

Upon knowledge and belief, Plaintiff Crystal L. Cox alleges that defendants violated 28:1332ds Diversity - Contract Dispute and caused Plaintiff harm, thereby Plaintiff is allowed all available relief by law.

Plaintiff Crystal L. Cox alleges that defendants are in breach of contract and this has caused Plaintiff Harm.

Plaintiff Crystal L. Cox alleges that defendants are in breach of fiduciary duty.

Defendants owed Plaintiff a duty of "good faith and fair dealing" upon the parties to a contract.

## Cause of Action 8.) Truth in Lending Act (TILA) FDIC Law, Regulations, Related Acts

Plaintiff Crystal L. Cox re-alleges, and fully incorporates all previous paragraphs in their entirety.

Upon knowledge and belief, Plaintiff Crystal L. Cox alleges that defendants Ray Fauth and the Whitefish Credit Union have violated Truth in Lending laws and that all other defendants have aided and abetted, acting in conspiracy with Defendant Ray Fauth and Defendant Whitefish Credit Union and that this has caused Plaintiff irreparable harm, of which Defendants are liable to Plaintiff for. Plaintiff Crystal L. Cox wishes all allowable relief by law granted to her by this court.

## Cause of Action 9.) 23:1441 Contract Real Estate

Plaintiff Crystal L. Cox re-alleges, and fully incorporates all previous paragraphs in their entirety.

43

Plaintiff Crystal L. Cox alleges that defendants violated **23:1441 Contract Real Estate** and that this violation has caused irreparable harm.

Upon knowledge and belief, Plaintiff Crystal L. Cox alleges that defendants engaged in conspiracy, fraud, and deception regarding real estate contracts, loans, appraisals, inspections, closing documents, RESPA laws, and have violated the rights of Plaintiff and caused irreparable harm to Plaintiff.

### Cause of Action 10.) 28:1332fr Diversity - Fraud

Plaintiff Crystal L. Cox re-alleges, and fully incorporates all previous paragraphs in their entirety.

Upon knowledge and belief, Plaintiff Crystal L. Cox alleges that defendants have committed fraud on appraisals, lending documents, mold analysis reports, engineered drawings, structural concerns, insurance fraud, consumer fraud and that this fraud has caused Plaintiff irreparable harm, of which Defendants are liable to Plaintiff for. Plaintiff Crystal L. Cox wishes all allowable relief by law granted to her by this court.

### Cause of Action 11.) 28:1332pd Diversity - Property Damage

Plaintiff Crystal L. Cox re-alleges, and fully incorporates all previous paragraphs in their entirety.

Upon knowledge and belief, Plaintiff Crystal L. Cox alleges that defendants have Violated 28:1332pd Diversity - Property Damage and have thereby caused Plaintiff irreparable harm, of which Defendants are liable to Plaintiff for.

Plaintiff Crystal L. Cox wishes all allowable relief by law granted to her by this court.

### Cause of Action 12.) 28:1332pi Diversity Personal Injury

Plaintiff Crystal L. Cox re-alleges, and fully incorporates all previous paragraphs in their entirety.

Upon knowledge and belief, Plaintiff Crystal L. Cox alleges that defendants have Violated

28:1332pi Diversity Personal Injury and have thereby caused Plaintiff irreparable harm, personal injury, of which Defendants are liable to Plaintiff for.

Plaintiff Crystal L. Cox wishes all allowable relief by law granted to her by this court.

### Cause of Action 13.) 28:1332pl Diversity Product Liability

Plaintiff Crystal L. Cox re-alleges, and fully incorporates all previous paragraphs in their entirety.

Plaintiff Crystal L. Cox alleges that defendants have Violated 28:1332pl Diversity Product Liability and have thereby caused Plaintiff irreparable harm, of which Defendants are liable to Plaintiff for.

Plaintiff Crystal L. Cox wishes all allowable relief by law granted to her by this court.

### Cause of Action 14.) 18:0241 Conspiracy Against Citizen Rights

Plaintiff Crystal L. Cox alleges that defendants have Violated 18:0241 Conspiracy Against Citizen Rights and have thereby caused Plaintiff irreparable harm, of which Defendants are liable to Plaintiff for.

Plaintiff Crystal L. Cox wishes all allowable relief by law granted to her by this court.

Plaintiff Crystal L. Cox alleges that defendants have conspired to injure, oppress, damage, and violated the rights of Plaintiff.

Plaintiff Crystal L. Cox re-alleges, and fully incorporates all previous paragraphs in their entirety.

### Cause of Action 15.) 28:1343 Violation of Civil Rights

Plaintiff Crystal L. Cox re-alleges, and fully incorporates all previous paragraphs in their entirety.

Plaintiff Crystal L. Cox alleges that defendants have Violated 28:1343 Violation of Civil Rights and have thereby caused Plaintiff irreparable harm, of which Defendants are liable to Plaintiff for.

Plaintiff Crystal L. Cox wishes all allowable relief by law granted to her by this court.

Plaintiff Crystal L. Cox alleges that defendants have conspired to injure, oppress, damage, and violated the rights of Plaintiff.

## Cause of Action 16.) 28:1332ds Diversity - Contract Dispute

Plaintiff Crystal L. Cox re-alleges, and fully incorporates all previous paragraphs in their entirety.

Upon knowledge and belief, Plaintiff Crystal L. Cox alleges that defendants violated 28:1332ds Diversity - Contract Dispute and caused Plaintiff harm, thereby Plaintiff is allowed all available relief by law.

Plaintiff Crystal L. Cox alleges that defendants are in breach of contract and this has caused Plaintiff Harm.

Plaintiff Crystal L. Cox alleges that defendants are in breach of fiduciary duty.

## Cause of Action 17. Negligence

Plaintiff Crystal L. Cox re-alleges, and fully incorporates all previous paragraphs in their entirety.

Plaintiff Crystal L. Cox alleges that defendants acted with negligence, are in violation of negligence by law. And that this negligence caused Plaintiff irreparable harm and damage.

Defendants had a Duty to Plaintiff. Defendants are / were in breach of that duty and this caused major, irreparable harm and damage to Plaintiff.

## Cause of Action 18.) Fraud

Plaintiff Crystal L. Cox re-alleges, and fully incorporates all previous paragraphs in their entirety.

Upon knowledge and belief, Plaintiff Crystal L. Cox alleges that defendants have committed fraud on appraisals, lending documents, mold analysis reports, engineered drawings, structural concerns, insurance fraud, consumer fraud and that this fraud has caused Plaintiff irreparable harm, of which Defendants are liable to Plaintiff for. Plaintiff Crystal L. Cox wishes all allowable relief by law granted to her by this court.

Upon knowledge and belief, Plaintiff Crystal L. Cox alleges that defendants made false material representation which caused Plaintiff harm.

Upon knowledge and belief, Plaintiff Crystal L. Cox alleges that defendants made false material representation to Plaintiff knowing that Plaintiff was relying on this information for major decisions regarding health, business, well being and financial matters.

Defendants actions constitute fraud. Defendants fraudulent conduct caused Plaintiff to suffer general and special damages.

Plaintiff has suffered irreparably at the deceptive acts of defendants.

## Cause of Action 19.) Implied Covenant of Good Faith and Fair Dealing

Plaintiff Crystal L. Cox re-alleges, and fully incorporates all previous paragraphs in their entirety.

Upon knowledge and belief, Plaintiff Crystal L. Cox alleges that defendants have not acted in good faith and Implied Covenant and have thereby caused Plaintiff irreparable harm.

Upon knowledge and belief, Defendants owed Plaintiff the duty of honesty in fact and to abide by commercial standards and fair dealing. Defendants breached their duty, concealed information, falsified reports, failed to perform action paid for by Plaintiff and committed fraud upon Plaintiff. Of which Plaintiff is allowed all general and special damages by law.

### Cause of Action 20.) Punitive Damages

Plaintiff Crystal L. Cox re-alleges, and fully incorporates all previous paragraphs in their entirety.

### Cause of Action 21.) Breach of Duty, Breach of Care

Plaintiff Crystal L. Cox re-alleges, and fully incorporates all previous paragraphs in their entirety.

### Cause of Action 22.) Real Estate Settlement Procedures Act (RESPA)
12 USC 1707, TITLE 12--BANKS AND BANKING, CHAPTER 13--NATIONAL HOUSING USCTitle 42--The Public Health and Welfare Chapter 69, Sec. 5301, 5308, 5309.

Plaintiff Crystal L. Cox re-alleges, and fully incorporates all previous paragraphs in their entirety.

Upon knowledge and belief, Plaintiff Crystal L. Cox alleges that defendants have violated Real Estate Settlement Procedures Act (RESPA) 12 USC 1707, TITLE 12--BANKS AND BANKING, CHAPTER 13--NATIONAL HOUSING USCTitle 42--The Public Health and Welfare Chapter 69, Sec. 5301, 5308, 5309 and have thereby caused Plaintiff irreparable harm.

Upon knowledge and belief, Plaintiff Crystal L. Cox alleges that defendant First American title has covered up an inspection which showed mold and other issues with the subject property, and protected the rights and interest of defendant Mike Workman, Defendant Century 21 over the rights of Plaintiff and the LAW.

Upon knowledge and belief, Plaintiff Crystal L. Cox alleges that defendant Mike Workman, Defendant Century 21 violated RESPA laws and forced Plaintiff to use title company he chose, and this caused Plaintiff irreparable harm.

### Cause of Action 23.) FDIC Law, Regulations, Related Acts

Plaintiff Crystal L. Cox re-alleges, and fully incorporates all previous paragraphs in their entirety.

Upon knowledge and belief, Plaintiff Crystal L. Cox alleges that defendants violated FDIC Law, Regulations, Related Acts and caused Plaintiff harm, thereby Plaintiff is allowed all available relief by law.

### Cause of Action 24.) MONTANA CREDIT UNION ACT

Plaintiff Crystal L. Cox re-alleges, and fully incorporates all previous paragraphs in their entirety.

Upon knowledge and belief, Plaintiff Crystal L. Cox alleges that defendants violated the MONTANA CREDIT UNION ACT, and caused Plaintiff harm, thereby Plaintiff is allowed all available relief by law.

### Cause of Action 25.) Toxic Mold Safety and Protection Act of 2002" (H.R. 5040)

Plaintiff Crystal L. Cox re-alleges, and fully incorporates all previous paragraphs in their entirety.

Upon knowledge and belief, Plaintiff Crystal L. Cox alleges that defendants violated the Toxic Mold Safety and Protection Act of 2002" (H.R. 5040)

# Relief requested of this court

Plaintiff Crystal L. Cox wishes this court to find defendants guilty of all counts, causes of action and to award Plaintiff all relief allowed by law in this matter.

Plaintiff Crystal L. Cox wishes this court to award Plaintiff $10 Million Each from the Following All Named Defendants.

Plaintiff Crystal L. Cox wishes this court to award plaintiff general damages, special damages, actual damages, punitive damages, and all damages allowed by law.

*signed 2 C*

**Certificate of Service:**

I hereby certify that I served the foregoing on May 3rd 2013 to:

U.S District Court
District of Montana
Paul G. Hatfield
Suite 2100
901 Front Street
Helena, MT 59626-9708

Respectfully Submitted,

*signed 2 C*

**Crystal L. Cox**
**Pro Se Plaintiff**
**P.O. Box 2027**
**Port Townsend, WA**
**(406) 624-9510**
**Crystal@CrystalCox.com**

50